**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**


**DEAN ANGELLE ET AL**                    **CASE NO.  6:25-CV-01113**

**VERSUS**                                **JUDGE ROBERT R. SUMMERHAYS**

**C V S HEALTH CORP ET AL**               **MAGISTRATE JUDGE CAROL B. WHITEHURST**


## REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion to Compel Arbitration. (Rec. Doc. 10). Plaintiffs opposed the motion (Rec. Doc. 28), and Defendants replied (Rec. Doc. 29). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the Court's standing orders. Considering the evidence, the law, and the parties' arguments, and for the following reasons, the Court recommends that Defendants' motion be granted.

## Facts and Procedural History

Plaintiffs, individually and on behalf of others similarly situated, filed this putative class action in state court against CVS Health Corp., CVS Pharmacy, Inc., Caremark PCS Health LLC (collectively "CVS/Caremark"), Spradley & Spradley, Inc., Jessee McCormick, Matthew Spradley, and Linda Spradley (collectively "the Lobbyist Defendants") asserting claims under Louisiana's Unfair Trade Practices

Act (LUPTA). (Rec. Doc. 2-1 and 2-2[1]). Plaintiffs' claims arise from CVS/Caremark's alleged June 11, 2025 text messages and emails to thousands of Louisiana CVS customers urging them to contact their state representatives to vote against pending legislation that would impact CVS/Caremark. (Rec. Doc. 2-1, ¶4).

Defendants removed the case to this Court in August 2025, asserting jurisdiction under the Class Action Fairness Act (CAFA). The Court denied Plaintiffs' Motion to Remand. (Rec. Doc. 24; 25). The Court now considers Defendants' earlier filed motion to compel arbitration, wherein Defendants argue that Plaintiffs' claims are subject to mandatory arbitration per the terms of agreements Plaintiffs accepted in creating online CVS/Caremark accounts. Plaintiffs oppose the motion on the grounds that CVS/Caremark has not submitted sufficient evidence that they or other putative class members agreed to the terms requiring submission of all claims to arbitration.

CVS/Caremark submitted the declaration of senior paralegal, Amanda Nevins, attesting that pertinent CVS records showed that both Plaintiffs, Dean and Elizabeth Angelle, created online user accounts on Caremark.com on June 28, 2020. (Rec. Doc. 10-3, ¶4). In order to create online user accounts, Plaintiffs were required to enter certain personal information and to check a box confirming that they agreed

---

[1] Plaintiffs filed an amended complaint in state court to assert an additional state law claim regarding protected health information.

to the Terms and Conditions. The Terms and Conditions, presented via hyperlink to the full CVS Caremark Term and Conditions, stated:

> EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU, ON THE ONE HAND, AND CVS/CAREMARK OR ITS SUPPLIERS OR VENDORS, ON THE OTHER HAND, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY AND YOU AGREE THAT CVS/CAREMARK AND YOU ARE EACH WAIVING THE RIGHT TO TRIAL BY A JURY. YOU AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION.

(Rec. Doc. 10-3, ¶8-9, referencing p. 21 (as written)). Subsequent amendments to the Caremark Terms and Conditions also included mandatory arbitration provisions. (Id. at ¶13-14, referencing p. 46-49; 71-75)

Similarly, Plaintiff Elizabeth Angelle created an online account for CVS.com in December 2021. By creating the account, Elizabeth agreed to CVS Pharmacy Terms of Use and Privacy Policy. (Id. at ¶15-18). The CVS Terms of Use included a nearly identical arbitration provision to that of the Caremark Terms and Conditions. (Id. at ¶18, referencing p. 88-89). Subsequent amendments to the CVS Terms of Use also included arbitration provisions. (Id. at ¶20-22, referencing e.g. p.

3

116). CVS/Caremark now seeks to compel compliance with the foregoing arbitration provisions.

## Law and Analysis

### I.    Choice of Law

"[The Federal Arbitration Act] FAA § 2—the Act's substantive mandate— makes written arbitration agreements valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract [and] creates substantive federal law regarding the enforceability of arbitration agreements." *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.,* 748 F.3d 249, 257 (5th Cir. 2014) (cleaned up). However, state contract principles also still apply, as long as the state rules do not undermine the goals and policies of the FAA. *Id*. and *ASW Allstate Painting & Const. Co. v. Lexington Ins. Co.,* 188 F.3d 307, 310 (5th Cir. 1999). "[P]arties may choose state arbitration rules through a choice-of-law provision." ASW, 188 F.3d at 310, citing *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University,* 489 U.S. 468, 477, 109 S.Ct. 1248 (1989).

CVS/Caremark maintains that, per the Caremark and CVS terms requiring arbitration, New York law governs. (Rec. Doc. 10-3, p. 21; 88). Plaintiffs did not argue that any other state law should apply, except to the extent they argue the Terms and Conditions/Terms of Use are not enforceable, as discussed below. Absent a

specific argument that New York law should not apply, the Court shall apply New York law to issues of contract formation.

## II.    **Arbitrability**

The Fifth Circuit applies the following analysis in determining whether to compel arbitration:

> In adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts begin by determining whether the parties agreed to arbitrate the dispute. This determination is generally made on the basis of "ordinary state-law principles that govern the formation of contracts…This determination depends on two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. In determining whether the dispute falls within the scope of the arbitration agreement, "ambiguities ... [are] resolved in favor of arbitration."

*Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir.), *opinion supplemented on denial of reh'g,* 303 F.3d 570 (5th Cir. 2002).

"To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004). "The making of contracts over the internet 'has not fundamentally changed the principles of contract." *Kai Peng v. Uber Techs., Inc.,* 237 F. Supp. 3d 36, 47 (E.D.N.Y. 2017), quoting *Hines v. Overstock.com, Inc.*, 668 F.Supp.2d 362, 366 (E.D.N.Y. 2009). "[I]n the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that [she has] at least

5

constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance." *Id*.

CVS/Caremark presented evidence, outlined above, that Plaintiffs assented to arbitration in agreeing to the CVS/Caremark Terms and Conditions/Terms of Use by creating online accounts, which required acceptance of such terms in order to proceed. (Rec. Doc. 10-3). CVS/Caremark refers to this type of agreement as a "clickwrap agreement."

> So-called clickwrap agreements are an increasingly common type of web-based contract; they are formed when a user is presented with a message on his or her computer screen and is required to manifest her assent to the terms. The Second Circuit routinely enforces clickwrap agreements as valid and binding contracts, for the principal reason that the user has affirmatively assented to the terms of agreement by clicking "I agree."
>
> …
>
> Mere classification of a web-based contract as a "clickwrap agreement" or a "browsewrap agreement," however, does not necessarily determine the contract's enforceability. Instead, in the context of clickwrap agreements, in addition to verifying that the user was required to indicate her assent, the court must consider whether the agreement's terms and conditions were "reasonably conspicuous." Even if there is no evidence that the offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms. Whether a reasonably prudent user would be on inquiry notice depends on the clarity and conspicuousness of the terms and conditions; in the context of web-based contracts this is often a function of the design and content of the relevant interface.

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 464 F. Supp. 3d 634, 640 (S.D.N.Y. 2020) (cleaned up), citing primarily *Meyer v. Uber Techs., Inc.*, 868 F.3d

66, 75 (2d Cir. 2017). See also *Fteja v. Facebook, Inc.,* 841 F. Supp. 2d 829, 840 (S.D.N.Y. 2012) (enforcing similar agreement).

Plaintiffs' only argument in opposition is that CVS/Caremark's evidence is insufficient to show they agreed to the arbitration agreements. The Court disagrees and finds that CVS/Caremark has submitted sufficient evidence to show that Plaintiffs are parties to valid clickwrap agreements through the Caremark and CVS websites. The Court further finds that the provision requiring arbitration is clear and conspicuous, set forth in all capital letters and bold font. (Rec. Doc. 10-3, p. 21; 88-89).

The arbitration provision provides that, except for disputes qualifying for small claims court (inapplicable here), "all disputes arising out of or related to this agreement or any aspect of the relationship between you, on the one hand, and CVS/Caremark or its suppliers or vendors, on the other hand, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, will be resolved through final and binding arbitration." Plaintiffs' claims that CVS/Caremark's messages were an unfair trade practice, tortious, and in violation of the Louisiana Pharmacy Act (Rec. Doc. 2-1; 2-2) easily fit within the scope of arbitrable disputes.

CVS/Caremark and the Lobbyist Defendants move jointly to compel arbitration; although, the Lobbyist Defendants are not parties to the agreements with

Plaintiffs. Nevertheless, Plaintiffs' claims against the nonsignatory Lobbyist Defendants are subject to arbitration as well. See discussion in *Reid v. Tandym Grp., LLC*, 697 F. Supp. 3d 62, 76 (S.D.N.Y. 2023) (enforcing arbitration as to nonsignatory under New York law).

Having found that the parties agreed to arbitrate and that the dispute falls within the scope of the arbitration agreement, the Court must next determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Gaskamp*, 280 F.3d at 1073. Plaintiffs offer no argument that any legal constraint foreclosed their obligation to arbitrate disputes, and the Court appreciates none. Accordingly, the Court finds that CVS/Caremark's motion should be granted and the case should be stayed pending arbitration. See *Yanez v. Dish Network, L.L.C.,* 140 F.4th 626, 632 (5th Cir. 2025), discussing *Smith v. Spizzirri*, 601 U.S. 472, 474, 144 S. Ct. 1173, 1175 (2024).

## Conclusion

For the reasons discussed herein, the Court recommends that Defendants' Motion to Compel Arbitration. (Rec. Doc. 10) be GRANTED and that the case be stayed pending arbitration.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of

Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 2nd day of March, 2026.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE